# OCTOBER TERM, 1860.

---

## Eli McMullen *v.* J. N. and A. D. Hinkle.

1. Principal and surety: mere indulgence to principal no release of surety.—It is well settled that mere indulgence granted by the creditor to the principal, without there being any valid contract for delay, based on a valuable consideration, and capable of being enforced, is no release of the surety.

2. Same: creditor cannot impair a security of surety.—A trust exists between the creditor and the surety that the former will do no act which will impair any security which the latter has by means of the principal's property; and if he do so, the surety will be released to the extent of the value of the security so impaired.

3. Same: application of payments cannot be made to impair a lien of surety.—The rules of law respecting the application of payments, where there are several debts due from the payer to the payee, do not allow the creditor to receive from his debtor in satisfaction of one debt property upon which there is a lien for the satisfaction of another, so as to defeat the right of a surety on the latter debt, to have the same applied to the discharge of his liability.

4. Same: case in judgment.—A recovered a judgment against B as principal, and C as surety. B had sufficient personal property, upon which this judgment was a lien, to satisfy it. A purchased this property from B in satisfaction of another debt due by B to him, and the lien of which was junior and subordinate to the lien of the judgment against B and C, and then removed the property from the State, whereby the right of the surety to have the judgment satisfied out of the property so removed was defeated: —*Held*, That the purchase and removal of the property by A, the judgment creditor, was such a fraud upon the rights of the surety, as to release him from further liability, and that the judgment as to him should be perpetually enjoined.

APPEAL from the Chancery Court of De Soto county. Hon. John W. Thompson, chancellor.

*While, Chalmers, Scales,* and *Wharton,* for appellants,

Argued that a trust existed between the creditor and the surety; that the former will do nothing in his transactions with the principal which would impair the rights of the surety, or place him in a worse situation than he would have been if it had not been for the interference of the creditor. Story's Eq. sec. 324, 506. That the conduct of Hinkle in purchasing from Branch the slave upon which the judgment for which appellant was bound as surety was a lien, and his removal from the State, was a palpable fraud upon the rights of the surety. The judgment was a lien on the slave superior to all others, and the surety had a right to have the slave applied to the payment of the debt on which he was bound; and that this right could not be defeated by the fraudulent act of appellees in removing him from the State.

*Clapp* and *Mills,* for appellees,

Insisted that the indulgence granted by the appellees to Branch constituted no defence to the surety. That, in order to release the surety on the ground of delay on the part of the creditor, there must be a contract for delay, made without the consent of the surety, for a definite period, and on a valuable and new consideration. *Board of Police of Clark Co.* v. *Covington,* 26 Miss. R. 470; *Roberts* v. *Stewart,* 31 Miss. R. 664; *Payne* v. *Coml. Bk. of Natchez,* 6 S. & M. 24; *Waddlington* v. *Gary,* 7 Id. 522; *Caruthers* v. *Dean,* 11 Id. 178; *Pickens* v. *Finney,* 12 Id. 468. That the mere "holding up," or neglect to enforce an execution, was no release of the surety. *Newell & Peirce* v. *Hamer,* 4 How. Mi. 691; *Montgomery* v. *Dillingham,* 3 S. & M. 647; *Union Bk. of Tennessee* v. *Govan,* 10 Id. 333; *McGehu* v. *Metcalf,* 12 Id. 535.

The creditor is not bound to enforce any lien he may have against the property of the principal debtor. In *McKenny's Exor.* v. *Waller,* 1 Leigh, 436, it was held that the "holding up" of an execution by the creditor, without the consent of the surety, whereby the principal had opportunity to remove and

did remove his property from the State, did not release the surety. That this case was cited with approbation by this court in *Newell & Peirce* v. *Hamer*, above cited. That it has also been held in this court that the failure of the creditor to present his debt to the commissioner of insolvency on the principal's estate, whereby his pro rata share of the principal's estate was lost, was no release of the surety. *Jackson* v. *Planters' Bk.*, 4 S. & M. 165; *Cohea* v. *Comr. of Sinking Fund*, 7 Id. 437. And this rule has been even further extended in cases where it is held that a creditor who has already secured a lien by attachment against the principal's property, may dismiss the attachment, and release his lien, without affecting his right to recover against the surety. *Bellows* v. *Loring*, 5 Pick. 307; *Naylor* v. *Moody*, 3 Blackf. R. 94.

The purchase by Hinkle from Branch of the slave, in satisfaction of the deed of trust, is no release of the surety. It is well settled that, in making a payment, the debtor may apply it to any one of several debts he may owe the creditor, which he may designate. This is but an appropriation of a payment by the debtor; the slave was his property, and he had the right to apply him to whichever debt he preferred. In case of failure to make the application by the debtor, then the creditor may apply the payment; and in case both neglect to make the application, then the law makes the application. And the rule in such cases is, that the law will make the application to that debt which is in most danger of being lost. See Williams on Personal Property, 187, where all the authorities are collected.

HANDY, J., delivered the opinion of the court:

This bill was filed by the appellant, stating, in substance, that in 1853 the appellees recovered a judgment against one Branch, on which execution issued, and a forthcoming bond was executed, with the appellant as surety, which was returned forfeited and execution issued thereon, which was "held up" by the appellant's consent; that in February, 1855, another execution issued thereon, which was about to be levied of the property of Branch, but it was ordered by the appellees to be "held up" without the appellant's consent, the appellees paying the costs; and they then took from Branch a trust-deed on all the property which he had

subject to execution, to secure other debts due by Branch to the appellees, but not this judgment; that, on learning this, the appellant went to the attorney of the plaintiffs in the judgment, and inquired into it, and was told by the attorney that the appellant was released from the judgment, and that he need have no apprehension of trouble about it; and at that time a negro man belonging to Branch was in his possession, and subject to the execution. That in May, 1856, the appellees took possession of this slave, and applied him to the payment of the debts due by the deed of trust by which he was conveyed for their benefit, and took him out of this State. That appellant heard no more of the judgment, and supposed it to be satisfied, until the fall of 1857, when another execution issued on it, and the appellant again applied to the attorney, who directed him to tell the sheriff not to levy it, so far as the appellant was concerned, and the sheriff thereupon held it up until December, 1857; but that the appellees are now attempting to enforce the execution against the appellant; and praying an injunction.

The answer admits the allegations of the bill, except that it denies that the attorney had any authority to tell the appellant that he was released from the judgment, or that the attorney ever told him so. It states that the slave mentioned in the bill was taken by the appellees at his full value, which satisfied the trust-deed, and left a surplus of two hundred or three hundred dollars, which was applied as a credit on the execution against the appellant.

On the hearing, the appellant proved by his own testimony the allegations of the bill as to the statements of the attorney touching his release; and this was all the proof.

Upon rules well settled in this court, the allegations of the bill, in relation to the stay of execution and giving indulgence to the principal, of themselves show no ground for relief. But the ground on which the appellant's claim to relief is chiefly rested is, that the conduct of the appellees, in appropriating the slave to their benefit, is, under the circumstances, such a fraud upon his rights, as to entitle him to relief against the execution; and we think that this view is sustained by the facts.

It appears that when the execution of February, 1855, was

issued, the principal defendant had property—a slave—sufficient to satisfy the execution, and on which the execution was a lien. The appellees not only prevented the levy of the execution on that property, by having it stayed, but they took a deed of trust on the slave to secure another debt, and afterwards appropriated the slave to the payment of that debt, and removed him beyond the reach of the execution.   It is clear that the execution was a superior lien to the deed in trust, and that the appellant, as surety, had the right to have it levied on the slave, and satisfied before the property was liable to the deed in trust.   If the slave had remained in this State, that right would have been enforced; but he was removed by the appellees, and appropriated to their benefit, thereby preventing the enforcement of the appellant's right by depriving him of the means of having the execution satisfied out of his principal's property.   This was in violation of the rights of the surety, and of the duty which the appellees owed him not to impair any security which he had by means of the property of the principal.   If he had become the purchaser of the slave by absolute purchase from the principal after the date of the judgment, and the slave had remained in this State, there can be no doubt but that the slave could have been levied on under the execution, at the instance of the appellant, and that the execution would have been satisfied thereby.   The slave being liable to the prior lien of the judgment, the appellees would have been compelled to submit him to its operation before they could have enforced their execution against the appellant.   But having removed the slave beyond the reach of the execution, they have appropriated to their own use property which was subject to the execution, and to permit them to enforce the execution against the surety, under such circumstances, would be to sanction a palpable fraud upon the surety's rights.

It is contended, in behalf of the appellees, that they had the right to purchase the slave in payment of their outstanding debt, upon the principle of application of payments made by a debtor, where the creditor has several demands against him.   But we do not consider this principle applicable to the present case, because the appropriation of the property to the junior lien or debt was in derogation of the rights of the surety to have the debtor's

property, subject to the judgment on which he was bound, applied to its satisfaction, and in violation of the duty of the creditor not to interfere with or prevent such application without the consent of the surety. \

Under these views of the case, the decree is erroneous and must be reversed; and a decree is ordered here perpetually enjoining the judgment as to the appellant.