**Richmond.**

FRANCISCO v. SHELTON.

February 21st, 1889.

1. SUBROGATION—*Principal and surety—Set-off—Release of surety—Case at bar.*—Vendor conveyed land, whereon was a trust deed which vendee got credit for, and promised in writing to satisfy. Later, vendor repurchased part and gave bond. Without having satisfied trust deed, vendee died, leaving to his father, who was a surety for trust debt, property ample to pay vendee's debts. Trust creditor released levy of *fi. fa.* on property of said surety, and then sold the land under trust deed, but not for enough to pay trust debts. In suit for the deficiency;

HELD:

As to trust creditor, vendee became principal and vendor surety for trust debt, for which the father, taking as heir vendee's property *cum onere*, became primarily bound; and he was not entitled to set-off, against vendee's promise to satisfy trust deed, vendor's said bond, but the property released from levy should be credited on trust debt so far as trust debtor and his sureties are concerned, and an account of said property should be directed.

2. IDEM.—In the case at bar the father was adjudicated a bankrupt, and at sale of some of his lands trust creditor was purchaser and bidder for others, and court below directed an account of value of such lands and injury by such bidding;

HELD:

Error.

3. JURISDICTION—*Bankruptcy—Pending suit.*—Subsequent proceedings in bankruptcy, to which lien creditor is not made a party, do not divest the State court of jurisdiction of suit pending therein for the enforcement of a lien, the rule being that the court that first takes jurisdiction of the parties and the subject-matter retains it.

Appeal from decree of circuit court of Louisa county, rendered September 22d, 1886, in a cause wherein John B. Shelton's

executor was complainant, and B. M. Francisco, in his own right and as heir and administrator of H. L. Francisco, deceased, W. W. Pettus, S. B. Hackett and the heirs and distributees of Fendol Chiles, deceased, were defendants. The object of the suit was to recover the balance of a debt against the defendants, a part whereof had been satisfied by the sale of land conveyed in trust to secure said debt. The decree being adverse to B. M. Francisco, administrator, etc., he appealed. Opinion states the case.

*Guy & Gilliam,* and *W. E. Bibb,* for appellant.

*John Hunter, A. K. Leake, F. V. Winston,* and *R. L. Gordon, Jr.,* for appellees.

LACY, J., delivered the opinion of the court.

. The controversy in this case has arisen concerning a debt due to John B. Shelton's estate by W. W. Pettus, B. M. Francisco, S. B. Hackett, and Fendol Chiles, evidenced by the bond of the said Pettus, executed January 4, 1854, for $5,000, with the said Francisco, Hackett and Chiles as sureties; the debt being further secured by a trust deed on three hundred and sixty-six and one-twelfth acres of land and certain slaves. Chiles died in June, 1857, and his estate was distributed soon after, upon the execution of refunding bonds. On the 24th of April, 1857, Pettus sold all of the land conveyed in the said trust deed to one Henry L. Francisco, the son of the said B. M. Francisco, at the price of $10,983.74, one-half payable January 1, 1858, and the residue payable January 1, 1859, and the title was retained until the whole of the purchase-money had been paid. On the 1st day of October, 1858, Pettus purchased of the said Henry L. Francisco one hundred and sixty acres of this land at $3,204.37½, and gave his bond therefor, payable October 1, 1863. On the 10th January, 1859, the whole debt of Henry L. Francisco to Pettus

being then due, the two parties had a settlement, which was set forth by a written agreement, wherein it appeared that, after crediting Henry L. Francisco with the $5,000 Shelton debt, and all other payments, the said Francisco owed Pettus $1,047.02; the Pettus debt to Francisco, not being due, was not included. On the 27th day of January, 1862, the said Francisco and Pettus had another settlement, when it appeared that Francisco had paid all of the Pettus debt, except the Shelton debt, which had been reduced by Francisco by payments until it was $4,000, and this Francisco now *personally assumed and bound himself* in writing to pay; it having been before this a lien on the said land, which was liable for its payment. Francisco now took upon himself a personal obligation to pay it; the land, however, being unreleased, and still bound for it.

Henry L. Francisco, being then a soldier, was shortly thereafter killed in battle, and died unmarried and intestate; and his father, the said B. M. Francisco, hereinbefore mentioned as one of the sureties originally bound on the Pettus bond, was left his sole heir and distributee, and qualified as the personal representative on his estate. The estate of the said Henry L. Francisco, so descended and coming to his father, was large, and far more than ample to pay all of the debts of the said Henry L. Francisco, including the Shelton debt, and so he may be regarded as having assumed, and as having become liable for, all the undertakings of his son, as set forth above. Pettus never paid his debt due October 1, 1863, and B. M. Francisco, the father, never paid the debt to Shelton, and subsequently Shelton's executor enforced the lien of the trust deed on the Pettus land, and the whole of it was sold to satisfy the Shelton debt, and a large part of the Shelton debt left unpaid. To enforce the payment of this balance, Shelton's executor, in 1871, filed his bill against Francisco, and the heirs and distributees of Fendol Chiles, deceased, to enforce the payment thereof, as against them jointly, claiming that they are equally bound therefor; claiming that there was not less than $1,500 of this debt still

due ; that he had levied on the personal property of B. M. Francisco, and that he had claimed his homestead exemption in it; that Francisco is insolvent; and that the above-mentioned Pettus and Hackett, the other obligors on the bond, are totally insolvent.

The heirs and distributees of Fendol Chiles, deceased, by their cross-bill, claimed that by reason of the facts already stated, B. M. Francisco was first bound to pay the Shelton debt, and that Shelton had agreed by his dealing in the premises to so regard the said B. M. Francisco, and also demurred to and answered the original bill.   Francisco demurred to, filed a plea, and answered the cross-bill.   Subsequently, on the 20th day of August, 1872, the said B. M. Francisco was adjudged bankrupt on his own petition, in which proceedings some of his lands were sold, and bought by Shelton's executor, and others bought by B. S. Francisco, his son, for which it appears the said B. S. Francisco has never paid the purchase-money.

There were depositions taken in the cause setting up the foregoing facts.   And on the 22d day of September, 1886, the decree complained of was rendered, wherein, after reciting the pleadings, the court held that, by reason of the facts stated, Henry L. Francisco became, as between himself and Pettus, primarily liable to pay the Shelton debt; that B. M. Francisco took the estate of Henry L. Francisco *cum onere*, and the obligation devolved upon him to pay the Shelton debt so far as assets came to his hands, or ought to have so come to his hands, which, as shown by the *record, were ample,* and that the sureties of said Pettus in his said bond are in equity entitled to said agreement; that Shelton was bound to prosecute his debt, so as not to impair the rights of Pettus and his sureties, and the property of Francisco levied on and released by Shelton should be credited on the debt so far as they were concerned ; that the said Shelton, by going to the sale of the bankrupt court and buying some land, and bidding for other parcels, etc., after this suit had been brought, injured the sureties of the debt, and an account should

be ordered of the difference between the real value of this land and the price for which it was sold in the bankrupt court; that the notes of B. S. Francisco given at the bankrupt sale for the purchase of the land bought by him were improperly assigned to B. M. Francisco, and were liable for the Shelton debt, but that the record is not sufficient to show whether the remedy for this should be in the bankrupt court or the State court; that, as to the liability of the purchasers of land of B. M. Francisco bound by Shelton's judgment, such liability is, as the statute provides, inversely in the order of purchase; but as to this, and the ultimate liability of the heirs and legatees of Fendol Chiles, deceased, it is not now necessary to decide, and the decision thereon is reserved; and, without passing upon a commissioner's report filed in the cause, directed the following accounts: (1) What was the value of the property of B. M. Francisco which was levied on by the sheriff, and released by order of Shelton's executor. (2) What was the value of the land of B. M. Francisco sold in the bankrupt court, and purchased by said executor at the time of said sale, showing the difference between said value, and the amount paid for the same by said executor. (3) An account showing the amount due by said B. S. Francisco, trustee, for the purchase-money of the land bought by him at the sale in bankruptcy of the land of B. M. Francisco. (4) What lands of B. M. Francisco are subject to the lien of the judgment in favor of Shelton's executor, and whether and to what extent any of the purchasers of the said lands, or any part thereof, paid the purchase-money therefor after the aforesaid judgment was docketed; and an account showing the annual and fee-simple value of said real estate, and the order of time of purchase of each parcel; also showing the existing liens on said lands, and their priorities, and the annual and fee-simple value of each parcel. From this decree Francisco's administrator applied for and obtained an appeal to this court.

The first assignment of error by the said appellant is as to the action of the circuit court in rejecting his plea seeking to

offset against the promise of Henry L. Francisco to pay the Shelton debt the bonds of Pettus given for the purchase of the one hundred and sixty acres of land, which, as above stated, Pettus purchased of H. L. Francisco, the same being a part of the tract of land originally bought by Henry L. Francisco from Pettus, upon which rested the lien of the trust deed to secure the payment of the Shelton debt above mentioned. The ruling of the circuit court upon this point was, we think, without error. Francisco had never put himself in a position to collect these Pettus bonds.; in other words, they never became due to him. He agreed first to pay the Shelton debt and raise the lien of the trust deed. He purchased the Pettus land at the price of $10,983.74. He agreed to pay the $5,000 due to Shelton as a part of this, and he was credited with this as with so much money paid by him. As between him and Francisco, then, this became his debt; that is, he became the principal, and Pettus, not having been released by Shelton, and being still bound, was his surety. Pettus agreed to give him $3,204.37½ for a part of this land. This agreement could not be enforced against Pettus until Francisco was able to make him a title to the said land free of incumbrances. Francisco never did this, never paid the Shelton debt, which remained a lien upon the land superior to any claim thereto of either Francisco or Pettus, and this lien was enforced, and the land sold, under the deed in trust, and the proceeds of the sale proved insufficient to satisfy the prior lien; and Pettus, being thus deprived of the land, was entitled to have these bonds surrendered to him. The land not bringing enough to pay the Shelton debt, the circuit court held that Francisco was bound to pay his balance as principal debtor by reason of his *assumpsit* as to the Shelton debt, and that the Pettus bond could not be offset against this amount.

The appellant insists that this claim of his is sustained by the decision of this court in the cited case of *Osborne* v. *Cabell,* 77 Va. 462, where that identical question was settled. But

there is a very important distinction between the two cases. Hitchcock, holding a piece of incumbered land, a lot in the city of Richmond, agreed to sell this lot to Osborne, and Osborne was to pay him $1,000, and to pay the lien on the lot, and Hitchcock agreed on his part, in the settlement of the matters between them, to cut wood on his Lancaster county tract of land sufficient to net Osborne $20,000. Hitchcock never performed his part of the agreement, and this court in that case held that Osborne could not, therefore, be compelled by Hitchcock to perform his part of the agreement, nor could Cabell, by his admitted and conceded right to stand in Hitchcock's shoes, claim more than Hitchcock could justly claim. The lot of land was bound for the Cabell debt, and was sold to satisfy it, and the money paid to Cabell. But there were no personal covenants against Osborne which could be enforced by any person claiming by subrogation to the rights of Hitchcock under the mutual agreement of Hitchcock and Osborne, because Hitchcock had no such right.

In this case the obligation of Francisco was to pay the Shelton debt, and he, in effect, received from Pettus the money with which to pay this when he credited the purchase price of the land he purchased with the full amount of the Shelton debt. In his settlement with Pettus there was no dependent covenant with Pettus which remained unperformed on the part of Pettus. When he should pay the Shelton debt, as he agreed to do, then Pettus had nothing to do but to make him a deed, which he was bound to do, and which the record shows he was perfectly willing to do; while, on the other hand, the subsequent purchase of land from him by Pettus was dependent in one sense upon his (Francisco's) compliance with his agreement, because the Shelton debt was a lien on the land as against both parties, and until that was paid Francisco was in default, and Pettus was under no obligation to pay him anything.

In the case of *Willard* v. *Worsham*, 76 Va. 392, this question came before this court for consideration and decision. In that

case Segar sold to Willard one-half of a piece of property in Virginia, consisting of an hotel and its appliances, and they became partners. A lien rested on the hotel to secure a debt due Worsham of $5,000. The hotel was destroyed by fire, and a part of the debt remained upaid. Segar became insolvent, and released the claim against Willard. Upon a suit against Segar and Willard to collect the debt, brought by Worsham, this court held that Willard, as grantee of one-half of the trust property, assumed payment of half of the trust-deed debt as part of the consideration, and thus became personally liable to Worsham; the learned judge who delivered the opinion in that case saying : " In most of the cases found in the books the mortgaged estate is conveyed to the grantee with an assumption on his part of the entire mortgage debt. In such cases, the grantee's promise being to pay the whole debt, there is, of course, no difficulty in holding him liable to the full measure of his contract." And it was held that, as between Segar and Willard, Willard was the principal debtor and Segar the surety, and that Worsham, the creditor, was entitled to all the collateral securities held by his debtor, Segar, and hence could be subrogated to the benefit of the covenant of Willard with Segar to pay half the debt.

In *Crowell* v. *Currier,* 27 N. J. Eq. 154, cited and approved in the foregoing case, it is said that the right of a mortgagee to hold the purchaser of the equity of redemption for a deficiency, who assumes the payment of the mortgage by covenant to the mortgagor, does not rest upon the theory of contract between the purchaser and the mortgagee, upon which an action at law may be maintained, but stands exclusively, according to an almost unbroken line of decisions, on the ground that the covenant of the purchaser is a collateral security obtained by the mortgagor, which, by equitable subrogation, inures to the benefit of the mortgagee. The case of *Van Meter's Ex'or* v. *Van Meter,* 3 Gratt. 148, is also a case in point. 1 Jones, Mortg. sec. 755 ; Baylies, Sur. 490, 493 ; *Whitlock* v. *Gordon's Adm'r,* 1 Va. Law J. 370.

While upon all the decisions Henry L. Francisco became the principal, and Pettus the surety, for the Shelton debt, he died without paying the Shelton debt. His property having descended to his father, Francisco, the appellant, and being largely in excess of the Shelton debt, the said appellant is bound to pay the debts of the said Henry L. Francisco, of which this is one, and the circuit court rightly so decided.

The second assignment of error is as to the rejection of the plea of the appellants, B. S. Francisco, trustee, and Fannie A. Francisco, to the jurisdiction of the circuit court in the premises, by reason of the above-recited proceedings in the bankrupt court. There was no error in this ruling of the circuit court; the jurisdiction of the circuit court first attached. The appellee, Shelton, was not made a party to the proceedings in the district court of the United States, nor were the heirs and distributees of Fendol Chiles, and the mere notice to the creditors of Francisco to prove their debts did not make them parties, nor by proving their debts did they become parties to the case in that court; nor did the adjudication in bankruptcy oust the circuit court of its jurisdiction to enforce liens in the suit then pending therein, in which Francisco was a party and made his defenses, he, during its pendency, having invoked the jurisdiction of the district court by filing his petition to be adjudged a bankrupt therein. As was said by Mr. Justice Miller in the case of *Eyster* v. *Gaff*, 91 U. S. 521: "It is a mistake to suppose that the bankrupt law avoids of its own force all judicial proceedings in the State or other courts the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition. The court in the case before us had acquired jurisdiction of the parties and of the subject-matter of the suit. It was competent to administer full justice, and was proceeding, according to the law which governed such a suit, to do so. It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending. It was the duty

of that court to proceed to a decree, as between the parties before it, until, by some proper proceedings in the case, it was informed of the changed relations of any of those parties to the subject-matter of the suit." In the absence of any appearance by the assignee, the validity of the decree can only be impeached on the principle that the adjudication of bankruptcy divested the other court of all jurisdiction whatever in the foreclosure suit.

The man who contests the right to real or personal property with the bankrupt loses none of those rights by the bankruptcy of his adversary. The courts remain open to him in such contests, and the statute has not divested these courts of jurisdiction in such actions. If it has for certain classes of actions conferred a jurisdiction for the benefit of the assignee in the circuit and district courts of the United States, it is concurrent with and does not divest the jurisdiction of the State courts. See, also, *Smith* v. *Mason,* 14 Wall. 419 ; *Marshall* v. *Knox,* 16 Wall. 551; *Mays* v. *Fritton,* 20 Wall. 414; *Doe* v. *Childress,* 21 Wall. 642; *Ray* v. *Norseworthy,* 23 Wall. 128; *Factors* v. *Murphy,* 111 U. S. 738; *Burbank* v. *Bigelow,* 92 U. S. 179.

The third assignment of error by the appellants is that the court erred in disregarding the orders of the bankrupt court in assigning the notes of B. S. Francisco to the bankrupt as homestead exemption, and in treating them as still subsisting and binding upon the land. This the court doubtless held, because the lien upon the land was paramount to the claim of homestead exemption ; but the court says as to this : " But the record does not sufficiently show whether the remedy is to be sought in this court or in the bankrupt court," and decreed an account concerning it, as we have seen. There was no error in this assignment, for reasons already given in considering the second assignment of error.

This disposes of all the error assigned by the appellants. But the appellee, Shelton's executor, assigns as error the ruling of the circuit court that, as to the sureties of B. M. Francisco, the

value of the property of the said Francisco which was levied on by the sheriff, and released by order of the said Shelton's executor, must be credited on the debt, but not as to Francisco. The error is assigned upon the ground that the amount was small, and the lien was not released, but only held up. If this be correct, then the question is immaterial, as no person has been injured perhaps. But if a creditor who, holding the engagement of the surety, takes also from the principal debtor collateral security for the payment of the debt, he is bound to hold the property which he so takes in trust, not only for his own benefit, but also for the protection of the surety. He must, in dealing with the fund, act with good faith towards the surety as his *cestui que trust,* and hold it fairly and impartially for the benefit of the surety as well as of himself. . He must account to the surety for the value of the property, not only if he parts with it, or surrenders it without the consent of the surety, or does any affirmative act in violation of the trust upon which he holds it, but also for his negligence, or omission to perform any act whereby the surety's recourse to the fund is prejudiced. The right of the creditor against the surety will be destroyed by making such a compromise with the principal debtor that the surety cannot for his reimbursement be subrogated to the creditor's rights. *Renick* v. *Ludington,* 14 W. Va. 367; *Strange* v. *Fooks,* 4 Giff. 408; *Watts* v. *Shuttleworth,* 5 Hurl. & N. 235; 7 Hurl. & N. 353; *Taylor* v. *Scott,* 62 Ga. 39; *Kesler* v. *Linker,* 82 N. C. 456; *McMullen* v. *Hinkle,* 39 Miss. 142.

If the creditor has obtained the levy of an execution for the debt upon property of the principal sufficient to satisfy the debt, and then releases the levy, this will discharge the surety, for this is a security which the surety can require the creditor to preserve. And it has been held that, after property of the principal has been levied upon, a delivery of such property by the sheriff to the principal debtor will discharge the surety to the value of this property; for, if the creditor was not in fault, the sheriff will be liable to him, and the surety should be released;

if the creditor was in fault, than *a fortiori* the surety should be released. But a mere suspension of execution will not discharge the surety, unless it is the result of an agreement of the creditors with the principal debtor not to issue execution or not to attempt collection of him. Some act of interference with the surety's right of subrogation to a security, or a remedy, must be shown to operate his discharge by reason of the creditor's neglect in pursuing the principal or his property. *Jackson* v. *Patrick,* 10 S. C. 197 ; *Evans* v. *Raper,* 74 N. C. 639 ; *Blazer* v. *Bundy,* 15 Ohio St. 57 ; *Lumsden* v. *Leonard,* 55 Ga. 374 ; *Stephens* v. *Monongahela Bank,* 88 Pa. St. 157 ; *Cooper* v. *Wilcox,* 2 Dev. & B. Eq. (N. C.) 90 ; *Winston* v. *Yeargin,* 50 Ala. 340 ; *Curan* v. *Colbert,* 3 Ga. 239 ; *Brown* v. *Riggins,* Id. 405 ; Sheld. Subr. §§ 120, 122. In this case the property claimed to have been released is not claimed to have been sufficient to satisfy the debt, and the circuit court has directed an account concerning it, as we have seen. In this action of the circuit court there is no error.

The next assignment of error by the appellee is, that the circuit court held that Shelton, by bidding for the land offered for sale by the bankrupt court, and buying some, and compelling the purchaser of other lands to buy for a large price by bidding against him, injured the sureties, and that an account should be taken of the value of these lands at the time of the assignee's sale, and whether and to what extent the sureties have been injured by such action of the said creditor, which is the second item or account ordered by the court, as already set forth. We think that there is no sound principle upon which the creditor can be held responsible for the price for which these lands sold at a judicial sale. The sale was not by him or of his seeking. He was in no way whatever responsible for the actions of this court, which cannot reasonably be supposed to have been influenced by him in any degree. He found these lands advertised for sale. He was anxious to save his debt, and attended the sale for the sole purpose of making these lands bring as much

as he could. He did not desire to buy them, as is shown by the fact that he only bought such as he was compelled to buy to prevent a sacrifice. There was nothing in this to injure the sureties in any way whatever. It was as much to the interest of the sureties, and as much in their interest as his own. But for his interference a sacrifice was very probable, but he prevented it as far as he could without loss to himself, of which the sureties cannot complain.

We think the circuit court plainly erred in this action, and so much of the said decree as so decides will be reversed and annulled, and, as this disposes of all the errors assigned, the decree will in all other respects be affirmed.

DECREE REVERSED IN PART AND AFFIRMED IN PART.