# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

HENRY CLAY HOFHEIMER V. LILLIAN B. BOOKER.

June 13, 1935.

Present, Campbell, C. J., and Holt, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Alan J. Hofheimer* and *James E. Heath,* for the plaintiff in error.

*W. R. Ashburn,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

On the 30th day of July, 1925, Lillian B. Booker, the defendant below, executed a deed of trust on certain real estate at Virginia Beach, Virginia, to A. J. Clay, trustee, to secure to the Virginia Beach Holding Corporation unpaid purchase money for said property, evidenced by her three negotiable notes of even date for $1,600 each, numbered 1, 2, and 3, and payable July 30, 1926, July 30, 1927, and July 30, 1928, respectively, with interest from date, payable semi-annually.

On September 8, 1925, Lillian B. Booker conveyed said property encumbered with the aforesaid deed of trust to Margaret G. Woods, who, according to the express terms of the deed of conveyance, assumed the payment of the notes secured by said deed of trust.

On October 30, 1925, Margaret G. Woods conveyed the same property to Socol Realty Corporation, a New York corporation, which grantee, according to the provisions of said conveyance, in turn assumed the payment of the aforesaid indebtedness with which the property had been encumbered by Lillian B. Booker.

Prior to the end of the calendar year 1925, Henry Clay Hofheimer, the plaintiff below, purchased from the Virginia Beach Holding Corporation two of the aforesaid notes of Lillian B. Booker, designated as number two, maturing July 30, 1927, and number three, maturing July 30, 1928. Note number one seems to have been paid by the Socol Realty Corporation to the Virginia Beach Holding Corporation. Prior to the first interest period, which was January 30, 1926, Hofheimer forwarded interest notice on notes two and three to Nathan Socol, president of the Socol Realty Corporation, and the interest was duly paid by the corporation. Hofheimer also forwarded interest notice as to these two notes to the Socol Realty Corporation prior to the interest periods, July 30, 1926, and January 30, 1927, which installments were likewise paid. On July 22, 1927, Hofheimer wrote to the Socol Corporation as follows:

"I wish to notify you that six months interest will be due on three thousand and two hundred dollars ($3,200) and note of one thousand and six hundred dollars ($1,600) on the 30th day of July. The above was at one time the liability of Lillian B. Brooks" (Booker). "Your attention to this matter will be appreciated."

It appears that upon receipt of this letter Socol Realty Corporation paid the six months interest due on both notes to July 30, 1927, and a curtail of $500 on note number two due on that date, and was granted an extension of six months by Hofheimer for the balance of $1,100 on that note, which was paid by the corporation at the expiration of the extension period.

This suit was brought in September, 1932, to recover from Mrs. Booker the sum of $1,600, due on note number three, which matured July 30, 1928, with interest thereon from

July 30, 1932, until paid. The defendant filed two special pleas, asserting that her grantee, Mrs. Margaret G. Woods, assumed payment of said note as part of the consideration for the conveyance of said property, and that the Socol Realty Corporation, grantee of said Margaret G. Woods, likewise expressly assumed the payment of said note; in consequence whereof the Socol Realty Corporation became primarily liable for the payment of said note, as principal debtor, and defendant became secondarily liable therefor, as surety; that said Socol Realty Corporation paid to the plaintiff the interest on said note up to and through July 30, 1932; that said note matured July 30, 1928, and thereupon, without the consent of the defendant, the plaintiff, Hofheimer, extended the time for payment of said note to the party primarily liable, by reason whereof the defendant became, by operation of law, discharged from further liability thereon.

There was a trial of the case by a jury, which rendered a verdict for the defendant, Mrs. Booker, and to the judgment entered thereon by the court, the plaintiff, Hofheimer, obtained this writ of error.

The first assignment of error goes to the refusal of the court to set aside the verdict as contrary to the law and the evidence. It appears from the record that before the note sued on became due, Nathan Socol (who seems to have practically owned, operated and controlled the corporation bearing his name) wrote Hofheimer advising him that the corporation would be unable to pay the note when due, and asking for six months time in which to meet the obligation. It also appears that this request was granted by the following letter written by plaintiff's brother, an attorney, acting for him, dated July 14, 1928:

"I have had a talk with my brother and he has agreed to grant your request for an extension of six months, provided, however, that you agree to pay the same at the expiration of the extension."

That this extension of six months on the debt was agreed to by the plaintiff, and without Mrs. Booker's con-

sent, is not controverted. It also seems to be conceded that if a creditor by positive contract with the principal debtor, for a valuable consideration, and without the consent of the surety, extends the time for payment of the debt for a definite period, the surety is thereby discharged.

It is well settled that a grantee of mortgaged premises, who has purchased subject to a mortgage for which his grantor was primarily liable, and has assumed the payment of the mortgage debt as a part of the consideration, renders himself personally liable for the discharge of the debt, not only to the mortgagor but also directly to the mortgagee, on the ground that, as between the parties to the deed, the grantee thereby becomes the principal debtor for the mortgage debt, and the grantor is thenceforth merely a surety for the debt. *Vanmeter's Ex'rs* v. *Vanmeter,* 3 Gratt. (44 Va.) 148; *Willard* v. *Worsham,* 76 Va. 392; *Osborne* v. *Cabell,* 77 Va. 462; *Livermon* v. *Lloyd,* 155 Va. 940, 157 S. E. 146; *Francisco* v. *Shelton,* 85 Va. 779, 8 S. E. 789; *Hubard & Appleby* v. *Thacker,* 132 Va. 33, 110 S. E. 263, 21 A. L. R. 423. And where there are successive grantees of the mortgaged premises, each assuming payment of the mortgage debt, the mortgagee may hold either or all of the grantees for the debt. 19 R. C. L., page 375; note, 21 A. L. R. 448, and cases cited therein.

It is, therefore, obvious that by reason of the assumption first by Mrs. Woods and then by Socol Realty Corporation of the mortgage debt in question, the Socol Realty Corporation became primarily liable for the payment of the debt, and Mrs. Booker only secondarily liable therefor, as surety.

Plaintiff contends, however, that in order for Mrs. Booker to obtain relief as surety by reason of the extension granted the Socol Realty Corporation, it is incumbent upon her to show knowledge on the part of Hofheimer that the corporation had assumed the debt, and the acceptance by Hofheimer of said corporation as the principal debtor, and that Mrs. Booker failed to prove these facts.

The evidence shows that from the time Hofheimer ac-

quired the notes in 1925, he sent Socol Realty Corporation notice prior to each due date of the interest, and that said corporation paid the interest on both notes and the principal of note number two, due July 30, 1927; that he also notified said corporation in regard to the interest on the note in suit and received payment for the same from the said corporation down to and including the payment due July 30, 1932; that during all that period Hofheimer did not call on Mrs. Booker for a payment of either interest or principal, or in any way intimate the purpose on his part to hold her liable until he learned in the summer of 1932 that the Socol Realty Corporation had become insolvent. Moreover, the notes in question were signed by Mrs. Booker as maker, and neither the name of the Socol Realty Corporation, nor of Nathan Socol, appeared on them as in any way responsible for their payment. This being the case, it is difficult to perceive why Hofheimer should have called on the Socol Realty Corporation in the first instance for the payment of the interest, and continue his dealings with them exclusively until just before this suit was instituted, if he did not know that the said corporation had assumed payment of the debt, and it was not his purpose to assent to the relation of said corporation as primarily liable therefor. Although he testified in the case, he did not deny that he knew of this relationship, nor did he make any explanation of his dealings with the Socol Realty Corporation above referred to.

■ Considering all the facts and circumstances, we think the jury was warranted in finding, under the instructions of the court, that Hofheimer had knowledge that Mrs. Booker only occupied the position of surety with reference to the debt, and that he assented to that relation.

In 20 R. C. L., page 340, it is said: "Notice is of two kinds, actual and constructive. The statutes of some States provide that actual notice consists in express information of a fact. And some courts have said that notice is actual when it is directly and personally given to the person to be notified. It is the general rule, however, that actual

notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would be warranted in inferring notice. It is a mere question of fact, and is open to every species of legitimate evidence which may tend to strengthen or impair the conclusion."

■ Notice is a matter of fact, and is to be proved like all other facts, by direct proof of the fact itself, or by proof of circumstances from which the fact may be justly inferred. *French* v. *Successors of Loyal Co.,* 5 Leigh (32 Va.) 627; *Fisher* v. *Borden,* 111 Va. 535, 69 S. E. 636; *Farley* v. *Bateman,* 40 W. Va. 540, 22 S. E. 72.

Counsel for the plaintiff cite a number of cases in their brief to the effect that in order for a surety to be discharged by the acts of the creditor or obligee, the latter must have knowledge or notice of the existence of the relation of principal and surety. That doctrine is not controverted by the defendant, but the question here is whether or not there is sufficient evidence from which it may be inferred that the plaintiff did have such notice. While in those cases it was held that the proof did not show that fact, under the circumstances existing here, the cases relied on are inapplicable.

It is further contended, however, that the extension of time in the case at bar was not binding on Hofheimer so as to release the surety, Mrs. Booker, because there was no consideration for the extension. It appears that Nathan Socol died in 1931, but his son, who kept the books and was familiar with the business of the Socol Realty Corporation, testified that at the time the extension was made in July, 1928, the promise on the part of the corporation was to pay interest during the period of the extension.

In 21 R. C. L. 1027, it is said: "An agreement by a creditor to extend the time for the payment of the debt in consideration of the payment by the debtor of the contract rate of interest during the period of extension, which agreement does not constitute a binding contract because it fixes no definite period of extension, is not sufficient to

release a surety on the debt from liability, though it is made without the consent of the surety. But, it has been held, if a binding agreement is entered into, without the consent of the surety, for an extension of time to the debtor for a fixed and definite period in consideration of the payment of the contract rate of interest, there is a sufficient consideration to support the agreement, and the surety is discharged. The distinction is between an agreement for an extension for a definite period, and for which interest is to be paid, and an agreement for an indefinite extension of time. In the former, the agreement on the part of the debtor is to retain the money, as on a new loan, and pay interest therefor for the certain time, and on the part of the creditor to forbear his right to enforce payment during the extended time, this constituting a valid agreement; while, on the other hand, an agreement for an indefinite extension may be terminated at any time by either party at his mere will and option, and therefore does not constitute a binding contract. Where there is an agreement for an extension of time to the debtor for a fixed period it has been held to be wholly immaterial what rate of interest is agreed on by the parties, whether it be the same as or a greater or less rate than that stipulated for by the original contract."

In 50 Corpus Juris, at page 138, the rule is thus stated: "(Sec. 229) c. *Necessity of Fixed or Definite Period of Extension.* To effect a discharge of the surety, the extension of the principal debt must be for a fixed or definite period. It is not sufficient that the creditor actually does wait a long time after an agreement for delay. But any fixed period of extension, however short, is sufficient, such as a day, or even a moment."

And on page 147 (section 243): "But the promise to pay interest which will accrue during such period, is ordinarily regarded as constituting a sufficient consideration, * * *."

■ While we are aware of no case in which this question has been decided in Virginia, it seems to be settled by certainly the great weight of authority that if the extension

is for a definite period, without the consent of the surety, with the promise to pay the contract rate of interest, such promise constitutes sufficient consideration to support the agreement, and the surety is discharged; the determining factor being that the extension must be for a definite and certain period of time. The following cases cited in the brief support this rule: *Wood* v. *Newkirk,* 15 Ohio St. 295; *German Savings Ass'n* v. *Helmrick,* 57 Mo. 100; *Union Mutual Life Ins. Co.* v. *Hanford,* 143 U. S. 187, 12 S. Ct. 437, 36 L. Ed. 118; *Fanning* v. *Murphy,* 126 Wis. 538, 105 N. W. 1056, 4 L. R. A. (N. S.) 666, 110 Am. St. Rep. 946, 5 Ann. Cas. 435, 442; *Dodgson* v. *Henderson,* 113 Ill. 360; *English* v. *Landon,* 181 Ill. 614, 54 N. E. 911.

We, therefore, think that the trial court was right in refusing to set aside the verdict on the ground that the same was contrary to the law and the evidence.

■■ The petition presents six other assignments of error which must be adverted to. The second assignment relates to the refusal of the court to strike out defendant's pleas. It is admitted that this question is covered by the first assignment of error. The third, fourth and fifth assignments relate to rulings of the court in permitting certain questions to be asked over the objection of the plaintiff, which, it is claimed, were immaterial and prejudicial. The first of these objections is to the questioning of the plaintiff by defendant's counsel in reference to the extension which was given on note number two, falling due July 30, 1927. This evidence was, we think, properly admitted by the court to show the plaintiff's course of dealing with the Socol Realty Corporation in regard to the mortgage debt. The second objection is to a question propounded to the attorney for Mrs. Woods to show that he advised her that the statute of limitations would be a defense to her under her contract to assume the mortgage debt, if she was sued on the notes. The third objection is to a question propounded to the defendant by the court, as to the financial responsibility of Mrs. Woods. Upon consideration of these objections, while the evidence adduced may be termed more or

less irrelevant, if error at all, we do not think it was such prejudicial error as to justify reversal of the judgment, in view of the facts on the material questions in controversy.

Assignment number six relates to the refusal of the court to grant an instruction asked for by the plaintiff, to the effect that, as between Mrs. Booker and Hofheimer, Mrs. Booker is still the principal party liable, and no correspondence or agreements between Hofheimer and the Socol Realty Corporation can relieve the said Lillian B. Booker. This instruction was based upon the contention that there was no evidence to show that the plaintiff was aware that Mrs. Woods or the Socol Realty Corporation had assumed the debt. For reasons stated in the discussion of the first assignment of error this instruction was properly refused. Assignment number seven is to an instruction given for the plaintiff over the defendant's objection, which is merely in accordance with the principles of law already stated herein, and it is therefore unnecessary to discuss it.

Upon consideration of the whole case, we find no prejudicial error in the record, and the judgment will be affirmed.

*Affirmed.*