## CIRCUIT COURT OF LOUDOUN COUNTY

Helen A. Alberts

    v.

Karel Mintjens Furniture
International, Inc., et al.

Case No (Law) 12398

William S. Alberts

    v.

Karel Mintjens Furniture
International, Inc., et al.

Case No. (Law) 12399

March 4, 1993

BY JUDGE JAMES H. CHAMBLIN

This case is before the Court on the Motion for Summary Judgment filed by the defendant, Karel Mintjens Furniture International, Inc.

("KMFI") on October 23, 1992. For the reasons hereinafter set forth, the Motion for Summary Judgment is denied.

By agreement of the parties, facts shown by reference to documents in the public record and produced by the plaintiffs pursuant to requests for production of documents by KMFI may be taken as admissions against the plaintiffs for purposes of the Motion for Summary Judgment by the order entered herein on October 27, 1992. Accordingly, for purposes of this motion the Court has considered the 34 exhibits contained in the "Exhibits in Support of KMFI's Motion for Summary Judgment" filed October 27, 1992, and the facts recited in the parties' briefs to the extent they are uncontradicted. All facts recited herein were determined on the foregoing basis.

A motion for summary judgment was unknown at common law. M. Burks, Pleading and Practice, section 189, p. 303 (4th ed. 1952). It is only available when there is no material fact genuinely in dispute under Rule 3:18. It applies only in cases in which no trial is necessary because no evidence could affect the result. *Fire Assurance Corp.* v. *Cohen*, 203 Va. 810, 814 (1962). The Supreme Court has called it a "drastic remedy." *Shevel's, Inc.* v. *Southeastern Assoc.*, 228 Va. 175, 181 (1984). It must clearly appear that one party is entitled to a judgment based upon the pleadings and admissions in the proceedings.

In November 1984 the plaintiffs, William S. Alberts and Helen A. Alberts, his wife, conveyed four parcels containing approximately 105 acres in the Town of Leesburg to European-American Furniture Company ("Euram"). As a part of the purchase price, Euram executed two notes dated November 30, 1984, one payable to Helen A. Alberts in the principal sum of $311,691.34 and the other payable to William S. Alberts in the principal sum of $311,691.35. The two notes were secured by the lien of a first deferred purchase money deed of trust on the 105 acres (the "Alberts deed of trust"). The deed and deed of trust were duly recorded on November 30, 1984.

In June 1985 Euram conveyed 7.4506 acres of the property to Bernard M. Carlton, Trustee. In July 1985 this land was released from the lien of the Alberts' deed of trust of November 30, 1984.

In December 1986 Euram conveyed the remainder of the property (approximately 97 acres) to Fort Beauregard Development Corporation ("Fort Beauregard") by deed dated December 24, 1986, in which Fort Beauregard assumed the Alberts deed of trust. The deed was recorded December 30, 1986. On the same day Fort Beauregard had recorded a

deed of trust dated December 24, 1986, on the property securing a note made by it in favor of American Home Funding in the amount of $4,035,000.00. Recorded immediately after the American Home Funding deed of trust is a Deed of Subordination executed by the trustees under the Alberts deed of trust subordinating the lien of that deed of trust to the lien of the American Home Funding deed of trust.

The Alberts received a total principal curtailment in December 1986 in the amount of $280,522.00 on both notes as consideration for the subordination. The amount paid for the subordination and the subordination itself were permitted under the Alberts deed of trust. Mr. and Mrs. Alberts certainly had knowledge of the assumption of their deed of trust by Fort Beauregard. They subsequently received payments on the notes from Fort Beauregard. There is no evidence that they protested, did not approve or did not consent to the assumption. The Alberts continued to receive payments on their notes through July 1990. After the assumption Mr. and Mrs. Alberts had no further contact with Euram, or its successor, KMFI, until the commencement of a foreclosure of the property at a later date by the subsequent secured party.

After the assumption by Fort Beauregard, the Alberts agreed to subordinate their deed of trust to the liens of other deeds of trust on all or part of the property at least seven times between December 1988 and October 1990. *See* Exhibits No. 19, 21, 23, 27, 29, 30 and 32 of KMFI's "Exhibits." Additionally, they agreed to a modification of the terms of their notes at least three times, in November 1988, November 1989 and October 1990. *See* Exhibits No. 15, 17, 33 and 34 of KMFI's "Exhibits."

Despite what the Alberts may argue, it is well settled in Virginia that when a grantee in a conveyance of land agrees to assume an existing encumbrance on the land as a part of the purchase price, the grantee becomes the principal debtor for the payment of the encumbrance, and the grantor becomes merely a surety for the debt. *Thompson* v. *Miller*, 195 Va. 513, 518 (1954); *Hofheimer* v. *Booker*, 164 Va. 358, 364 (1935). Therefore, upon the assumption of Alberts deed of trust by Fort Beauregard in December 1986, Fort Beauregard became the principal debtor for the payment of the debt due the Alberts and Euram became a surety for the debt. This is clearly true as between Fort Beauregard and Euram. However, as held in *Hofheimer*, in order for the grantor to obtain relief as surety because of an action by the creditor, the grantor

must show knowledge on the part of the creditor that the grantee assumed the debt and the acceptance by the creditor of the grantee as the principal debtor. 164 Va. at 364.

The evidence summarized by KMFI in its Brief at page 3 clearly supports a finding that the Alberts knew that Fort Beauregard had assumed their deed of trust, but the same evidence does not necessarily show that the Alberts consented to Fort Beauregard as the principal debtor and Euram as merely a surety. The evidence presented on this motion is strikingly similar to the evidence in *Hofheimer* which the Supreme Court found supported a finding of such consent, but the evidence here is not such that reasonable persons could only conclude that the Alberts did consent. There is nothing in all the exhibits to show that after the assumption in December 1986 the Alberts knew that Euram was only a surety as to the debt and assented to that relation. *Hofheimer*, 164 at 365.

Although there appears to be no reported Virginia case on this point, this Court feels that in light of the clear rule of *Hofheimer* and *Thompson*, "any party," as referred to in Section 8.3–606(1), can be a maker of a note who later becomes a surety after the payment of the note is assumed by a subsequent grantee of the property securing the note. Furthermore, the holder of the note must have had knowledge of the assumption and consented to changed relationship of the grantor/maker and the grantee. Therefore, for the reasons stated above, KMFI, as Euram's successor, could be considered a surety for the debt if the Alberts had knowledge of and consented to the assumption (and the changed relationship of Euram and Fort Beauregard) and could be discharged if under Section 8.3–606(1)(b), the Alberts "unjustifiably impaired" the collateral for the debt. KMFI must prove that the Alberts did more than just impair the collateral. It must prove that the collateral was unjustifiably impaired. Although the evidence shows that the Alberts subordinated their deed of trust to at least seven other deeds of trust securing a total of about $20,000,000.00 and modified their notes at least three times, such evidence is meaningless without knowing all the circumstances under which the Alberts deed of trust was subordinated. The Alberts deed of trust permitted subordination; therefore, a mere subordination does not constitute impairment of collateral. Even if a subordination appears on its face to be contrary to the subordination provisions of the Alberts deed of trust, it does not necessarily follow that the subordination impaired the collateral.

Whether the Alberts impaired the collateral, and if they did, whether the impairment was unjustified is a decision for the trier of fact. Considering the evidence presented, reasonable persons could differ on the issue. Foreclosure on the property by another lienholder such that there is nothing left to benefit the Alberts does not necessarily mean that they impaired the collateral or impaired it unjustifiably. In other words, KMFI must show more than a mere failure of the foreclosure to satisfy the balance due on the Alberts deed of trust notes. There may have been other reasons for the subordinations. The property was, at least, to have been developed, and development normally increases the value of the property. The Alberts should have the opportunity to present other evidence to show that the collateral was not unjustifiably impaired by their actions.

The Alberts deed of trust incorporated the provisions of Section 55–60(5) therein by the short form phrase "renewal or extension permitted." Section 55–60(5) provides:

> The words "renewal or extension permitted," or words of like purport, shall be construed as if the deed set forth: "The grantor hereby consents and agrees that the debt hereby secured, or any part thereof, may be renewed or extended beyond maturity as often as may be desired by agreement between the creditor and any subsequent owner of the property, and no such renewal or extension shall in any way affect the grantor's responsibility, whether as surety or otherwise."

Any extension of the maturity date by the Alberts after the assumption by agreement between them and any owner after Euram does not in any way affect KMFI's responsibility as a surety or otherwise. The three extensions of maturity date by the Alberts did not affect KMFI's responsibility. However, the modification of the interest rate in the Allonge dated October 22, 1990, may have an affect depending upon the ultimate proof in the case as to the Alberts knowledge and consent to Euram's relation to the debt as a surety. The Court expresses no opinion at this time on the Alberts' suing for interest at the rate set in the notes as opposed to the increased rate as set in the Allonge.