COURT OF APPEALS OF VIRGINIA


Present:  Judge Bray, Senior Judges Duff and Overton
Argued at Alexandria, Virginia


LEWIS A. BROWN, JR.
                                           OPINION BY
v.    Record No. 2964-97-4         JUDGE CHARLES H. DUFF
                                          JULY 27, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF WARREN COUNTY
                     Dennis L. Hupp, Judge

          Thomas D. Logie for appellant.

          Jeffrey S. Shapiro, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Lewis A. Brown, Jr., appellant, appeals his conviction for

grand larceny by false pretenses in violation of Code § 18.2-95.

He argues on appeal that the trial court erred in (1) denying

his motion to quash the indictment; and (2) denying his motions

to strike the evidence.  Finding no error, we affirm the

conviction.

                            FACTS

     With his 1994 state income tax return, appellant, an

accountant and owner of Front Royal Bookkeeping ("Front Royal"),

submitted W-2 forms claiming he was employed by Royal Cinemas

("Royal") and Tomorrow's Country Buffet ("Buffet") in 1994.  The

W-2 forms indicated that appellant earned $15,500 in income from

Royal and $25,000 in income from Buffet in 1994.  The W-2 forms

also indicated that Royal withheld $2,500 in state income tax for appellant in 1994, and Buffet withheld $4,500 in state income tax for appellant in 1994. As a result of these claims, appellant received an additional $7,000 tax refund from the Commonwealth of Virginia. Appellant was indicted for grand larceny in violation of Code § 18.2-95.

At the trial, Francis Brooks, owner of Royal, a subsidiary of B & B Enterprises ("B & B"), testified that, in 1993, Royal filed for Chapter 11 bankruptcy and that appellant, Brooks' friend, offered to help him in any way he could. Brooks said he did not discuss compensation with appellant but assumed they would "get to it later." Appellant was not on Royal's payroll, and Royal did not receive a bill from appellant or pay appellant or Front Royal for any services. Brooks testified that appellant prepared tax documents and documents required by the court for the bankruptcy proceedings.

In 1995, appellant attached a W-2 form to his state income tax return indicating he had been paid $15,500 by Royal for his services in 1994. Brooks testified that Royal did not pay appellant $15,500 in 1994. Brooks first learned of a $15,500 debt allegedly owed appellant when a representative from the Virginia Department of Taxation approached Brooks with questions concerning appellant's 1994 W-2 form.

Royal's 1994 payroll booklet did not list appellant as an employee of Royal. Royal's quarterly tax report did not list appellant as an employee. A proof of claim filed in bankruptcy court indicated that Royal owed $5,541.50 to Front Royal, not appellant individually.

Brooks also testified that, with the exception of a few employees who were not compensated for their work in the last week that Royal operated, all of Royal's employees were paid for their work performed in 1994. Brooks also stated that, given the financial condition of Royal in 1994, Royal could not have afforded to pay someone $15,500 in 1994.

Ashrafullah Sayed, manager of Buffet, a/k/a Dinis Brothers Restaurant, testified that, after filing for bankruptcy in early 1994, Buffet had a financial agreement with Front Royal for accounting services. Buffet paid Front Royal monthly for services. Buffet had no agreement with appellant personally. Front Royal worked on "tax papers, payrolls, all of those" for Buffet. Front Royal also prepared Buffet's W-2 forms.

Appellant attached a W-2 form to his 1994 state income tax return indicating that Buffet paid him $25,000 in income in 1994. Sayed testified that Buffet did not pay appellant $25,000 in 1994. Buffet's 1994 W-4 forms, the withholding allowance certificates for Buffet's employees, did not include a W-4 form in appellant's name. Buffet's 1994 quarterly tax reports did

not include appellant as an employee for whom state income tax was withheld. Commonwealth's Exhibit No. 4 consisted of Buffet's 1994 W-3 form, entitled "Transmittal of Wage and Tax Statements 1994." Attached to the form were copies of Buffet's employees' W-2 forms. A W-2 form in appellant's name indicated that Buffet had paid appellant $10,000 in 1994, rather than the $25,000 indicated on the W-2 form filed by appellant with his 1994 state income tax return. The withholding for state income taxes on the W-2 form in Buffet's file was $2,000, rather than $4,500, as indicated on the W-2 form filed by appellant with his state income tax return.

With the exception of several employees who were not paid in the last two weeks that Buffet operated, all of Buffet's employees were paid in 1994 before the restaurant closed.

Invoices from Front Royal to Buffet for the months of July, 1994 through October, 1994 indicated that Buffet owed Front Royal about $4,000 for accounting services. The invoices did not indicate that Buffet owed any money to appellant, personally.

John Hawse, an investigator for the Virginia Department of Taxation, testified that independent contractors do not receive W-2 forms from the place at which they perform services. Hawse interviewed appellant about appellant's 1994 tax return. Initially, Hawse did not mention anything about appellant's 1994

W-2 forms. Appellant immediately volunteered that Hawse could check with appellant's employers if he thought the W-2 forms were "bogus." Appellant also told Hawse that he had worked as a consultant for B & B (or Royal) and Buffet and that B & B should have received an invoice from appellant for $15,500 in 1994.

Hawse also testified that appellant said he "had not been paid the wages that were reported on the W-2's and that he reported that in accordance with instructions from an IRS agent." When questioned further by Hawse, appellant could not recall the IRS agent's name, nor could he produce a tax ruling or policy to support his actions.

Hawse interviewed appellant again at a later date. Hawse advised appellant that both Sayed and Brooks had told Hawse that they did not hire appellant as an employee. Appellant replied that "they may be right" if they were referring to the fact that they did not prepare appellant's W-2 forms. Appellant also told Hawse that he thought he had filed a proof of claim with the bankruptcy court in order to protect the $40,500 the two companies allegedly owed him, but appellant never produced any documents to support this claim.

Appellant also gave Hawse conflicting information on whether he operated on a cash or accrual basis. In addition, the withholding rate for state income taxes on appellant's filed

W-2 forms was about 15% to 18%.  Hawse testified that the highest applicable withholding rate in Virginia is 5.75%.

Belinda Lang, office manager for Front Royal, testified that she typed appellant's 1994 W-2 forms for Royal and Buffet based on information she received from the businesses.  Lang could not explain why the W-2 form attached to Buffet's 1994 W-3 Transmittal of Wage and Tax Statements differed from the W-2 form attached to appellant's 1994 tax return.  Lang testified that she "usually" typed the W-2 forms, but that anyone in the office had access to the forms.  Lang stated that she prepared the 1994 W-2 forms for Buffet's employees based on payroll records provided to her by Buffet, with the exception of appellant's W-2 form.  She prepared appellant's W-2 form based on information provided to her by the owner of Buffet.  Lang did not prepare bills for appellant for any consulting work he may have personally performed, but she said that both Buffet and Royal owed Front Royal money.

Ray Madaris, a manager with the Virginia Department of Taxation, testified that as a result of appellant including the alleged income and alleged withholding for state income taxes that he claimed was paid by Royal and Buffet, appellant received an additional state income tax refund of $7,000.

Appellant denied that he prepared the W-2 forms in question.  He testified that he did not know whether the

companies actually paid the indicated withholding tax. He

denied that he personally performed bookkeeping services for

either Royal or Buffet. Appellant testified that he performed

"services as a bankruptcy consultant" for Buffet and that he was

an employee of the business. He stated that he assisted Royal

with marketing. Appellant testified that he never received cash

payment from either business, but that they partially paid him

with food, gas money, and "entertainment" expenses.

ANALYSIS

I. Motion to Quash the Indictment

Appellant argues that the trial court erred in denying his

motion to quash the indictment on the ground that his conduct of

allegedly filing a false state income tax return was punishable

only under Code § 58.1-348, and not Code § 18.2-95, the grand

larceny statute.

Code § 58.1-348 is entitled "Criminal prosecution for

failure or refusal to file return of income or for making false

statement therein; limitation." The statute provides, in

pertinent part:

> Notwithstanding any other provisions of
> this title and in addition to any other
> penalties provided by law, any individual or
> fiduciary required under this chapter to
> make a return of income, who willfully fails
> or refuses to make such return, at the time
> or times required by law, or who, with
> intent to defraud the Commonwealth, makes
> any false statement in any such return,
> shall be guilty of a Class 1 misdemeanor.

- 7 -

(Emphasis added.)

> "Well established 'principles of
> statutory construction require us to
> ascertain and give effect to the legislative
> intent.'" Legislative intent is to be
> determined by the words in the statute.
> Absent ambiguity, "the manifest intent of
> the legislature clearly expressed in its
> enactments should not be judicially thwarted
> under the guise of statutory construction."

Herrell v. Commonwealth, 28 Va. App. 579, 584, 507 S.E.2d 633, 636 (1998) (citations omitted).

In light of these principles, we hold that the language in the first sentence of Code § 58.1-348 is not ambiguous. This language clearly provides that the statute is not the exclusive avenue for punishment for filing a false state income tax return. Further, "[i]t is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney." Kauffmann v. Commonwealth, 8 Va. App. 400, 410, 382 S.E.2d 279, 284 (1989). "[I]t is a matter of prosecutorial election whether the Commonwealth proceeds under the misdemeanor statute or the felony statute against an accused . . . ." Mason v. Commonwealth, 217 Va. 321, 323, 228 S.E.2d 683, 684 (1976). "Where the circumstances surrounding an offense permit prosecution under either of two statutes, the selection of the statute under which to proceed is a matter of prosecutorial

- 8 -

election." Smith v. Commonwealth, 17 Va. App. 37, 41, 434 S.E.2d 914, 916 (1993).

The Commonwealth charged appellant with unlawfully taking $7,000 from it as a result of filing a false state income tax return. It was within the Commonwealth's Attorney's discretion whether to prosecute appellant under Code § 18.2-95, the grand larceny statute, or to prosecute him under Code § 58.1-348. Accordingly, appellant's argument is without merit.

## II. Sufficiency of the Evidence

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted). "'[W]hat inferences are to be drawn from proved facts is within the province of the jury and not the court so long as the inferences are reasonable and justified.'" Higginbotham v. Commonwealth, 216 Va. 349, 352-53, 218 S.E.2d 534, 537 (1975) (citation omitted).

"To sustain a conviction of larceny by false pretenses, the Commonwealth must prove: (a) that the accused intended to defraud; (b) that a fraud actually occurred; (c) that the accused used false pretenses to perpetrate the fraud; and (d) that the false pretenses induced the owner to part with his property."

<u>Wynne v. Commonwealth</u>, 18 Va. App. 459, 460, 445 S.E.2d 160, 161 (1994) (<u>en</u> <u>banc</u>).

The evidence showed that neither Royal nor Buffet considered appellant to be an employee. No tax records, payroll reports, or other paperwork from Royal suggested that appellant was on Royal's payroll. In fact, Brooks testified that he never discussed a fee arrangement with appellant concerning work appellant performed for Royal.

Buffet had no payroll report, W-4 form, or quarterly tax report indicating that appellant was an employee. Buffet's records contained a copy of a 1994 W-2 form in appellant's name that indicated a lower amount of income paid and a lower amount of withholding for state income tax than the W-2 form filed by appellant with his 1994 state income tax return. Sayed testified that Buffet had an arrangement with Front Royal to pay by the month for services, but that it had no such agreement with appellant individually.

Both companies were in bankruptcy proceedings when they began working with appellant, and both companies were unable to pay some of their employees during their last weeks of operations. Furthermore, appellant admitted that he did not receive the income from Buffet and Royal as indicated on his 1994 W-2 forms. Moreover, given the financial status of Buffet, the jury could reasonably infer that Buffet did not contract with

- 10 -

appellant for $25,000 worth of accounting services as indicated on appellant's filed 1994 W-2 form.  Likewise, given the financial status of Royal, the jury could infer that Royal did not contract with appellant for over $15,000 worth of accounting services as claimed on appellant's filed 1994 W-2 form.

In addition, Front Royal, appellant's accounting business, filed a proof of claim against Royal in the bankruptcy court for only $5,541 worth of unpaid services, not $15,500.  Appellant personally filed no proof of claim for any unpaid services rendered to either Royal or Buffet.

Neither the businesses nor appellant produced invoices from appellant or Front Royal indicating that the bankrupt businesses owed appellant the sums of money indicated on the filed W-2 forms.  Indeed, invoices from Front Royal to Buffet indicated an outstanding balance of only about $4,000 for the months of July, 1994 through October, 1994.

From the evidence presented, the jury could conclude beyond a reasonable doubt that appellant was not an employee of either Buffet or Royal.  Furthermore, appellant admitted that he was not paid the income indicated on the W-2 forms.  Although Lang testified that she "usually" prepared the W-2 forms for Front Royal, she was unable to explain the discrepancy between the amount shown on appellant's filed W-2 form from Buffet and the amount shown on the W-2 form from Buffet's records.  Lang further

testified that anyone in Front Royal's office had access to the W-2 forms and could have completed one without her knowledge. Moreover, the W-2 forms filed by appellant were suspect because the withholding amount for state income taxes on those forms was 15% to 18%, whereas the evidence proved that the highest applicable withholding rate in Virginia is 5.75%. Thus, the jury could infer beyond a reasonable doubt that appellant falsified the filed W-2 forms, despite appellant's claim that he did not. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Therefore, from the evidence presented, the jury could conclude beyond a reasonable doubt that appellant knowingly and falsely represented his status as an employee of Royal and Buffet and that he knowingly and falsely represented the information on his filed 1994 W-2 forms concerning Buffet and Royal. In addition, the jury could infer beyond a reasonable doubt that appellant filed his falsified 1994 tax return with the intent to defraud the Commonwealth of Virginia of money by obtaining a greater state income tax refund than that to which he was entitled. The evidence proved that appellant received an additional $7,000 state income tax refund from the Commonwealth

- 12 -

as a result of the false information he filed concerning Buffet and Royal. Therefore, the evidence was sufficient to prove beyond a reasonable doubt that appellant committed grand larceny by false pretenses.

Appellant also contends that, in order to prove that he received something to which he was not entitled, the Commonwealth had to prove that Royal and Buffet did not pay to the Commonwealth the sums of state income withholding tax indicated on the filed W-2 forms. Appellant argues that the Commonwealth did not research all of the names under which the two businesses operated during the time in which the withholding tax could have been paid by the businesses. However, on the record before us, nothing in the documents from Royal indicated that appellant was employed by Royal in 1994 or that Royal paid any withholding state income taxes for appellant in 1994. Although Buffet's records contained a copy of a W-2 form in appellant's name for 1994, the amount of income and withholding tax on Buffet's copy of the W-2 form were less than the amounts indicated on the W-2 form filed by appellant. Furthermore, Buffet's payroll records did not indicate that appellant was an employee. Thus, the evidence excludes any reasonable hypotheses of innocence. "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those

that spring from the imagination of the defendant."  <u>Hamilton v.</u>
<u>Commonwealth</u>, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

The evidence proved that appellant intentionally filed a
falsified 1994 state income tax return and falsified W-2 forms
and that he received a state income tax refund in excess of $200
from the Commonwealth of Virginia to which he was not entitled.
These circumstances are sufficient to prove beyond a
reasonable doubt that appellant committed the charged offense.

For these reasons, we affirm the conviction.

<u>Affirmed</u>.