COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Beales
Argued at Chesapeake, Virginia


ERIC RYAN, S/K/A
  ERIC BERNARD RYAN

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1818-05-1          CHIEF JUDGE WALTER S. FELTON, JR.
                                                     JULY 25, 2006

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                              A. Bonwill Shockley, Judge

             Aleasa D. Leonard, Assistant Public Defender (Office of the Public
             Defender, on brief), for appellant.

             Rosemary V. Bourne, Assistant Attorney General (Robert F.
             McDonnell, Attorney General, on brief), for appellee.


        Eric Bernard Ryan ("appellant") was convicted of killing a companion animal in

violation of Code § 3.1-796.122.  He was sentenced to five years imprisonment, with four years

and eight months suspended.[1]  Appellant argues the evidence was insufficient to convict him of

violating Code § 3.1-796.122.  He further argues that Code § 3.1-796.122 is ambiguous and

permitted, at most, a conviction of a misdemeanor.

                                       BACKGROUND

        The evidence at trial established that in January 2004, James Rainey ("Rainey") and

Denny Wagner ("Wagner"), neighborhood teenagers, were waiting for their school bus in front

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also convicted of "fail to pay tax, no rabies vaccine, and deposit
maimed/disabled animal on street," all misdemeanors.  Those matters are not before the Court in
this appeal.

of Wagner's home. Appellant, who was standing with them, was temporarily residing with Wagner's mother. He housed his dog "Jadis," a fifty-pound female pit bull, in the fenced yard behind the house.

Appellant lured a neighborhood cat into the home's garage by calling "[c]ome here, kitty . . . [c]ome hear [sic] cat . . . [c]ome to the garage." After the cat went into the garage, appellant closed the garage door and told Rainey he was going to "teach the cat a lesson." Appellant then brought the pit bull into the closed garage.

Appellant directed the pit bull to attack the cat, saying "get 'em, Jadis, get the cat." When the cat tried to escape by jumping on shelves and onto a car in the garage, appellant "knocked it off the shelf and car with a broom so his dog could get it." Eventually, after chasing the cat for a "few minutes," the pit bull caught it and "locked its jaws around its neck" for approximately thirty seconds, while the cat was "grunting and breathing heavy." On appellant's command, the pit bull released the cat, which thereafter "barely limped" under a vehicle parked in the garage. Appellant then pushed the cat out of the garage with the broom. The wounded cat made its way under another vehicle on the road outside the garage. Appellant then pushed it from underneath that vehicle, telling it to "get off the property." The cat limped across the street and took refuge under another vehicle. Appellant "left it there and said it was gone." Rainey observed that the cat "didn't have much left" as it went underneath yet another car parked on the road. Appellant did not contact authorities or seek veterinary medical attention for the cat.

After school, Rainey and his parents searched unsuccessfully for the cat but did see blood underneath the car where it previously took refuge. They contacted Animal Control.

Officer D.W. Humphries ("Officer Humphries"), an Animal Control officer, eventually found the cat four houses down from appellant's home "on the side of the road on the curb." It was in "very bad condition" and "appeared to have been attacked by another animal or a dog."

The "incapacitated" cat was examined by Dr. Mark Roberts ("Dr. Roberts"), a veterinarian, who observed that the cat "had several wounds above the neck and was disoriented . . . was unable to walk, unable to stand . . . [and had] difficult[y] breathing." He determined that the injuries were untreatable and that it would be "inhumane to keep this cat alive." He concluded the cause of the cat's injuries to be blunt force trauma and "puncture wounds that entered into the skull above the neck that would appear to be associated with a bite wound."

Officer J.E. Cason ("Officer Cason"), another Animal Control officer, went to appellant's residence to investigate the incident the day following the incident. In the garage, he observed blood in "several spots" and a "small amount of blood . . . two to three feet up" on the wall. Appellant told Officer Cason that he was "unaware" that the cat was in the garage when he closed the door and brought his pit bull into the garage. Appellant was indicted for killing a companion animal in violation of Code §§ 3.1-796.122 and 18.2-10.

ANALYSIS

I.

On appeal from a criminal conviction, we must view the evidence "in the light most favorable to the Commonwealth, the prevailing party at trial" and "[w]e also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Morrisette v. Commonwealth, 264 Va. 386, 389, 569 S.E.2d 47, 50 (2002) (citations omitted). We must "affirm the judgment of the circuit court unless that judgment is without evidence to support it or is plainly wrong." Burns v. Commonwealth, 261 Va. 307, 337, 541 S.E.2d 872, 892 (2001) (citations omitted). See Code § 8.01-680 ("the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it"). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear the evidence as it is presented."

Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).

The record establishes that appellant, a convicted felon, told Rainey, a neighborhood teenager, that he was going to "teach the cat a lesson." He lured the cat into the garage, closed the door, then released his fifty-pound pit bull into that confined space, directing it to "get the cat." When the cat tried to escape from the pit bull by jumping onto shelves and the car parked in the garage, appellant knocked the cat down with a broom. After the dog attacked it, the cat "barely limped" under the car in the garage, from where appellant then "pushed it out of the garage" using a broom. Appellant made no effort to contact Animal Control officers or seek veterinary medical attention for the badly injured cat. Animal Control officers found the badly mutilated cat and took it to Dr. Roberts, a veterinarian, who determined that it would be "inhumane" to keep the cat alive. After euthanizing the cat, Dr. Roberts performed a necropsy,[2] concluding that the cat's lethal injuries were caused by blunt force trauma and "puncture wounds that entered into the skull above the neck that would appear to be associated with a bite wound."

Although appellant testified that he was unaware that the cat was in the garage when he released his pit bull into that space, the trial court "was entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused [was] lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citations omitted). The trial court noted that "[t]he Commonwealth's evidence was blood on the wall in the garage, blood on the floor in the garage, the pictures which are hard to look at . . . . How anybody could think that animal in that condition wasn't injured seriously is beyond me . . . . He is guilty beyond a reasonable doubt."

---

[2] A necropsy is an "examination of a body after death." Dorland's Illustrated Medical Dictionary 1180 (29th ed. 2000).

Appellant argues that "[t]he injury to the cat, which eventually led to its euthanization, was the direct result of the attack by the dog," rather than by any direct act "by his own hand." The evidence showed that appellant, through use of a broom to prevent the cat from escaping the pit bull's attack, which he commanded, engaged in conduct that directly led to the cat's death. Moreover, one who effects a criminal act through an instrumentality or unwitting agent is a principal in the first degree and may not escape criminal responsibility for a crime which he arranges to have committed through an instrumentality or by an unwitting agent. McAlevy v. Commonwealth, 270 Va. 378, 380, 620 S.E.2d 758, 759 (2005) (citations omitted). Appellant's use of the broom to assure the cat would fall prey to the attacking pit bull was no different than had he used the broom to force the cat into the street in front of an oncoming car.

The record reflects credible evidence to prove beyond a reasonable doubt that appellant was guilty of violating Code § 3.1-796.122.

II.

Appellant further contends that Code § 3.1-796.122 "creates ambiguity with regard to which subsection, and consequently, which penalty, is applicable to appellant's conduct." He argues that the trial court erroneously convicted him of violating Code § 3.1-796.122(H), a felony, rather than of violating Code § 3.1-796.122(A), a misdemeanor.

Code § 3.1-796.122(H) provides, in relevant part, that:

> Any person who (i) tortures, willfully inflicts inhumane injury or pain not connected with bona fide scientific or medical experimentation or cruelly and unnecessarily beats, maims or mutilates *any . . . cat that is a companion animal* whether belonging to him or another and (ii) *as a direct result causes the death of such . . . cat that is a companion animal, or the euthanasia of such animal on the recommendation of a licensed veterinarian*

*upon determination that such euthanasia was necessary due to the condition of the animal,* shall be guilty of a Class 6 felony.

(Emphasis added).[3]

Appellant was indicted for "kill[ing] a companion animal" in violation of Code

§§ 3.1-796.122 and 18.2-10.[4]  The indictment charged that appellant:

> [D]id torture, willfully inflict inhumane injury or pain . . . and unnecessarily beat, main [sic], or mutilate a (dog or cat) that was a companion animal and as a direct result caused the death of such animal on the recommendation of a licensed veterinarian who determined such euthanasia was necessary due to the condition of the animal, in violation of §§ 3.1-796.122; 18.2-10 of the Code of Virginia.

The language of the indictment closely tracks the language of Code § 3.1-796.122(H), and

specifically refers to a felony punishment as provided by Code § 18.2-10.[5]

As we have previously noted, "it is a matter of prosecutorial election whether the

Commonwealth proceeds under the misdemeanor statute or the felony statute against an

accused." Brown v. Commonwealth, 30 Va. App. 243, 250, 516 S.E.2d 678, 682 (1999) (citing

Mason v. Commonwealth, 217 Va. 321, 323, 228 S.E.2d 683, 684 (1976)).  Although the

Commonwealth could have elected to prosecute appellant for violating Code § 3.1-796.122(A), a

misdemeanor, it chose instead to pursue a conviction under the more specific provisions of Code

§ 3.1-796.122(H), and "we cannot gainsay its right to make that election." Mason, 217 Va. at

---

[3] In 2002, the General Assembly amended Code § 3.1-796.122, adding subsection H, creating a Class 6 felony when a person "tortures" or "willfully inflicts inhumane injury or pain" upon a companion animal to such an extent that the animal must be euthanized.

[4] Code § 18.2-10 provides punishments for each classified felony, including a Class 6 felony.

[5] Appellant did not allege that the indictment failed to provide him with adequate notice of the character and nature of the offense charged, nor did he seek any clarification of the charges by a bill of particulars. Hurd v. Commonwealth, 159 Va. 880, 885, 165 S.E. 536, 538 (1932); see also Code § 19.2-230.

324, 228 S.E.2d at 684-85 (no error in prosecuting accused for felony escape under then Code § 53-291(2) rather than misdemeanor escape under then Code § 18.1-290).

The trial court did not err in finding that the indictment was not ambiguous and that it provided ample notice to the appellant that he was being charged with violating the felony provision of Code § 3.1-796.122(H).

CONCLUSION

We conclude that the trial court did not err in finding the evidence sufficient to support appellant's conviction under Code § 3.1-796.122(H).  Further, the trial court did not err in convicting appellant of violating Code § 3.1-796.122(H), a felony, rather than Code § 3.1-796.122(A), a misdemeanor.  Accordingly, we affirm.

<u>Affirmed.</u>