COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, McClanahan and Senior Judge Willis
Argued at Chesapeake, Virginia

MARK DYWAYNE BISHOP

OPINION BY
v.      Record No. 1382-05-1      JUDGE D. ARTHUR KELSEY
JANUARY 23, 2007

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Samuel Taylor Powell, III, Judge

Richard E. Hill, Jr., for appellant.

Benjamin H. Katz, Assistant Attorney General (Robert F.
McDonnell, Attorney General; Richard B. Smith, Senior
Assistant Attorney General, on brief), for appellee.


The trial court convicted Mark Dywayne Bishop of driving after having been declared an

habitual offender in violation of Code § 46.2-357(A) and obstruction of justice in violation of Code

§ 18.2-460(C). On appeal, Bishop claims (i) the habitual offender conviction should be reversed for

insufficient evidence, and (ii) the obstruction of justice conviction should be vacated because the

statute invites an unconstitutionally broad scope of prosecutorial discretion. Finding neither

argument persuasive, we affirm.

I.

Under settled principles, we review the evidence in the "light most favorable" to the

Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

That principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270

S.E.2d 755, 759 (1980) (emphasis and citation omitted).

In December 2004, two police officers arrived at Bishop's home with a warrant for his arrest. Bishop was not there. The officers parked at a nearby location where they would not likely be seen and waited for Bishop to arrive. Shortly thereafter, the officers observed Bishop drive a vehicle down the public road and park in his driveway. He was alone. The officers confronted him in the driveway and asked if he was Mark Bishop. He said he was not. Believing him to be Bishop, the officers told him he was under arrest. Bishop resisted arrest and fought the officers, leaving one of the officers with abrasions and fractured ribs.

At trial, the Commonwealth introduced into evidence Bishop's DMV transcript. Prior to his most recent arrest, his driving record shows:

- a 1994 conviction for operating an uninsured vehicle
- three 1996 court-ordered license suspensions
- two 1996 convictions for driving under a revoked or suspended license
- two 1996 court-ordered revocations of his license
- a 1996 improper driving conviction
- a 1997 court-ordered license suspension
- a 1997 conviction for driving under a revoked or suspended license
- a 1997 DMV administrative declaration of habitual offender status
- a 1997 DMV administrative license revocation
- a 1999 court-ordered license suspension
- three 2000 court-ordered license suspensions
- six 2001 court-ordered license suspensions
- two 2001 convictions for driving under a revoked or suspended license — *one of the two offenses occurring on March 10, 2001*
- several 2001 convictions for operating an uninspected vehicle, improper registration or license plates, and operating an uninsured vehicle — *all offenses occurring on March 10, 2001*
- a 2002 court-ordered license suspension
- two 2003 court-ordered license suspensions
- a 2003 conviction for driving under a revoked or suspended license, and
- a 2004 court-ordered license suspension.

Taking the stand in his own defense, Bishop did not challenge any aspect of the DMV transcript.  He did not mention, much less contest, his habitual offender declaration or his personal knowledge of that status at the time of the offense.  Nor did he dispute the multitude of traffic offenses and license suspensions upon which DMV predicated its administrative declaration of Bishop as an habitual offender.  Instead, Bishop testified that his girlfriend drove the vehicle while he sat in the passenger seat.  After she pulled into a private driveway and walked away from the car, Bishop stated, he moved into the driver's seat.  On cross-examination, Bishop admitted to two prior felonies.

At the close of the evidence, Bishop's counsel challenged the habitual offender charge on only one very specific ground:

> First of all, as to the habitual offender.  If you look at the driving record I believe it will tell you that the revocation which occurred April 28th, 1997 . . . that *he was notified for the H.O. determination, that is the habitual offender determination by law enforcement.*  It doesn't actually say he was notified after he was declared habitual offender.  I think that that is an important distinction.  He was notified of the process whereby he was going to be waived or where he was going to be adjudicated habitual offender so that he would know that it was going to occur, but it doesn't actually say he was notified having been adjudicated an habitual offender.  And I would suggest to the Court that under the <u>Reed</u> case . . . .  First of all, actual notice is required and I would suggest to the Court we don't even see constructive notice on this record.  *We know he was notified that there was going to be a termination, but we don't see in the record that he was going to be notified that he was determined habitual offender.*  But I would suggest that without notice we cannot sustain a conviction here for – a conviction of habitual offender.

On the obstruction of justice charge, Bishop's counsel argued that the similarities between Code § 18.2-460(C)'s felony provision and § 18.2-460(B)'s misdemeanor provision gave the prosecution unconstitutionally broad discretion.  The trial court rejected Bishop's arguments and convicted him of the misdemeanor habitual offender charge and the felony obstruction of justice charge.

- 3 -

II.

A. THE HABITUAL OFFENDER CONVICTION

On appeal, Bishop does not disavow his concession at trial that he received the notice indicated by the entry on the DMV transcript. He admits on appeal that the transcript shows that "Appellant received notification from law enforcement on March 10, 2001." Appellant's Brief at 7. Bishop simply disagrees that the notice he received was that he "was or had been declared an habitual offender." Id. Just as he argued at trial, Bishop argues on appeal that the notice merely reflected that the habitual offender determination process had begun. He points to two entries on the transcript, "the interpretation of which is the critical issue here." Id.

We agree with Bishop's framing of the issue on appeal but disagree with his interpretation of the DMV transcript. The disputed entries, as they appear on the transcript, read:

DETERMINED    ON: 1997/04/23 HABITUAL OFFENDER BY DMV
              ELIGIBLE TO RESTORE UNDER CURRENT LAW ON:
              RESTRICTED: N/A              FULL: 2000/04/23

REVOCATION    ISS: 1997/04/28 EFFECTIVE: 1997/05/28
              FOR HO DETERMINATION PROCESS
              NOTIFIED: 2001/03/10 BY LAW ENFORCEMENT
              ORDER DELIVERY DATE:       ORDER MAILED

Bishop's driving record is a creature of statute, required by Code § 46.2-208(H) to be maintained by DMV. "The statutory scheme for the enforcement of the habitual offender act" specifically relies upon DMV driving records as the principal database combining administrative and judicial records. Smoot v. Commonwealth, 18 Va. App. 562, 565, 445 S.E.2d 688, 690 (1994). DMV is "presumed to have kept accurate records" and to have done so consistent with its "statutory duties." Id. (quoting Commonwealth v. Dalton, 11 Va. App. 620, 623, 400 S.E.2d 801, 803 (1991)). Bishop's DMV transcript, therefore, must be interpreted in conformity with the statutes governing it.

- 4 -

Based upon his numerous traffic violations and license suspensions, DMV issued an administrative order determining Bishop to be an habitual offender in 1997. "Upon such determination, the Commissioner shall immediately cause the Department's records to indicate that the person *has been determined* to be an habitual offender . . . ." Code § 46.2-352(A) (repealed 1999) (emphasis added). Consistent with that requirement, Bishop's DMV transcript states: "DETERMINED ON: 1997/04/23 HABITUAL OFFENDER BY DMV."[1] Five days later, the transcript confirms, DMV issued its revocation order in conformity with the "HO DETERMINATION PROCESS" — just as former Code § 46.2-352(A) required.

Bishop concedes he received the notice from "law enforcement" in 2001. The DMV transcript indicates law enforcement provided this notice on March 10, 2001 — the same day Bishop committed four driving offenses for which he was later convicted. The notice Bishop received could not have been, as he claims, notice of the possibility of a *future* habitual offender determination. He had already been determined to be an habitual offender years earlier. The trial court, therefore, had ample reason to reject the only hypothesis of innocence asserted by Bishop at trial: that the 2001 notice he received from "law enforcement" *preceded* any determination of his status as an habitual offender.[2]

---

[1] Bishop's DMV transcript noted he was eligible for license restoration in 2000. The transcript, however, shows multiple entries from 2000 to the time of the most recent offense, *supra* at 2, all refuting the possibility of a license restoration. By statute, one subject to an habitual offender declaration may only have his privilege to drive restored by court order. See Code § 46.2-356; Sink v. Commonwealth, 28 Va. App. 655, 659, 507 S.E.2d 670, 672 (1998).

[2] Given our holding, we need not address the Commonwealth's additional argument that DMV's mailing of its habitual-offender/revocation order (noted on Bishop's DMV transcript) provided adequate notice to Bishop. See Clements v. Commonwealth, 43 Va. App. 56, 60, 596 S.E.2d 88, 89-90 (2004) (presuming that DMV, after issuing an habitual-offender/revocation order under Code § 46.2-352(A), "followed the statute's requirements for mailing").

Bishop complains that this reasoning conflicts with Reed v. Commonwealth, 15 Va. App. 467, 424 S.E.2d 718 (1992). We disagree. Reed involved a judicial, not an administrative, declaration of habitual offender status. The defendant in Reed received a show cause order commanding him to appear at a hearing to address whether he should be judicially declared an habitual offender. When the defendant failed to appear, the trial court declared him an habitual offender in his absence and served a copy of the declaration order on the defendant's father. Reed held that the pre-declaration notice received by the defendant warned only of the possibility of a future declaration, not of a then-existing declaration. Reed also found the post-declaration notice inadequate, as it was served only on the defendant's father but not on the defendant. Even if service on the defendant's father constituted "constructive notice," Reed reasoned, the habitual offender statute requires "actual notice" of the declaration. Id. at 473, 424 S.E.2d at 721.[3]

No aspect of Reed's reasoning conflicts with ours. In this case, the trial judge did not find "constructive" notice. He did not need to. Bishop conceded actual notice by law enforcement. The only question was what that notice said. Sitting as factfinder, the trial court inferred that the notice Bishop received in 2001 was of his *then-existing* habitual offender status. Factfinders may "draw reasonable inferences from basic facts to ultimate facts," Barnes v. Commonwealth, 47 Va. App. 105, 110 n.1, 622 S.E.2d 278, 280 n.1 (2005) (citation omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted). Nothing in this case suggests the trial court went beyond the proper limits of its factfinding discretion.

---

[3] That element of the Reed holding, as the Virginia Supreme Court later observed, may be an overstatement with respect to mailed notice given the statutory directive that mailing the habitual offender order "shall be deemed adequate notice of the order of the court, and no other notice shall be required." Holsapple v. Commonwealth, 266 Va. 593, 600, 587 S.E.2d 561, 565 (2003) (quoting former Code § 46.2-355).

Implicit in Bishop's argument is the erroneous conflation of constructive notice principles (that is, he may not have received notice, but we will treat him as if he did) and circumstantial proof of actual notice (he did get notice, and we can infer this from the surrounding circumstances). Actual notice is not downgraded to constructive notice simply because the evidentiary proof shifts from direct to circumstantial. See, e.g., Hofheimer v. Booker, 164 Va. 358, 365-66, 180 S.E. 145, 147 (1935) (holding "actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstances from which [the factfinder] would be warranted in inferring notice" (citation omitted)); Parrish v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (noting that actual knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence" (citation omitted)).

## B. CONSTITUTIONALITY OF CODE § 18.2-460

Bishop challenges his felony obstruction of justice conviction on the ground that Code § 18.2-460 gave the prosecutor unfettered discretion to charge his conduct as either a misdemeanor under subsection (B) of the statute or as a felony under subsection (C). In the context of resisting arrest, Bishop argues, the two subsections criminalize essentially the same conduct.[4] Leaving the charging decision solely in the hands of the prosecutor violates due process and equal protection principles, Bishop contends.[5]

---

[4] For the first time on appeal, Bishop contends Code § 18.2-460 is "void for vagueness." Consistent with Rule 5A:18, however, we address only arguments that were both timely and specifically presented to the trial court. See Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

[5] Bishop does not allege, and thus we need not discuss, the elements of a "selective-prosecution claim," Boyd v. County of Henrico, 42 Va. App. 495, 522, 592 S.E.2d 768, 781 (2004) (en banc), or an assertion of "prosecutorial vindictiveness," Barrett v. Commonwealth, 41 Va. App. 377, 392, 585 S.E.2d 355, 363 (2003).

We see no constitutional infirmity in the prosecutorial discretion necessarily required by the separate misdemeanor and felony provisions of Code § 18.2-460. If subsections (B) and (C) were separate statutes, no constitutional claim could be advanced. Under settled principles, "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." United States v. Batchelder, 442 U.S. 114, 123-24 (1979); Muhammad v. Commonwealth, 269 Va. 451, 502, 619 S.E.2d 16, 45 (2005). Consequently, a "prosecutor has the discretion to decide under which of several applicable statutes the charges shall be instituted." In re Horan, 271 Va. 258, 264, 634 S.E.2d 675, 679 (2006) (citation omitted).[6]

We find no principled basis not to recognize this same broad prosecutorial discretion when the charging decision involves two subsections of the same statute. It is the "structure of tripartite government" that "creates a judicial presumption in favor of 'broad' prosecutorial discretion," Boyd v. County of Henrico, 42 Va. App. 495, 521, 592 S.E.2d 768, 781 (2004) (*en banc*) (citations omitted), not the mostly ministerial decision to codify related felony and misdemeanor crimes as separate statutes rather than separate subsections of the same statute. See United States v. Rietzke, 279 F.3d 541, 546 (7th Cir. 2002) (rejecting argument that prosecutorial discretion recognized by Batchelder does not apply to subsections of the same statute). For this reason, the trial court correctly rejected Bishop's constitutional challenge to the prosecutorial discretion inherent in the different grades of obstruction of justice offenses criminalized by Code § 18.2-460.

---

[6] See also Mason v. Commonwealth, 217 Va. 321, 323, 228 S.E.2d 683, 684 (1976) (recognizing prosecutorial discretion to proceed "under the misdemeanor statute or the felony statute"); Brown v. Commonwealth, 30 Va. App. 243, 250, 516 S.E.2d 678, 682 (1999) (finding prosecution had discretion to charge under applicable misdemeanor or felony statutes); Smith v. Commonwealth, 17 Va. App. 37, 41, 434 S.E.2d 914, 916 (1993) (permitting discretion to prosecute "under either of two parallel statutes").

III.

Rejecting Bishop's challenge to the sufficiency of his habitual offender conviction and to the constitutionality of the obstruction of justice statute, we affirm.

<u>Affirmed.</u>

Willis, J., concurring, in part, and dissenting, in part.

I concur in the affirmance of Bishop's obstruction of justice conviction. I dissent from the affirmance of his habitual offender conviction.

Our review of Bishop's habitual offender conviction is controlled by Reed v. Commonwealth, 15 Va. App. 467, 424 S.E.2d 718 (1992). Pursuant to Code § 46.2-355, Reed was served with a show cause order requiring him to appear before the circuit court to show cause why he should not be determined to be an habitual offender. In disregard of that order, Reed did not appear. An order was entered adjudging him an habitual offender, revoking his driving license, and ordering him not to drive. Reed was not served or otherwise notified of that order.

Reversing Reed's conviction under Code § 46.2-357, we held that the constructive notice of his adjudication, based upon his joinder in the *ex parte* judicial proceeding, was insufficient to support his criminal conviction. We held:

> Code §§ 46.2-351 *et seq.*, by requiring that one "be direct[ed] . . . not to operate a motor vehicle on the highways in the Commonwealth and to surrender to the court all licenses or permits to drive a motor vehicle on the highways in the Commonwealth" before such person can be guilty of driving a vehicle "while the order of the court prohibiting such operation remains in effect," requires proof of actual knowledge that one has been declared to be an habitual offender before one can be convicted of driving after having been so declared and ordered not to drive . . . . [T]he provisions in Code § 46.2-355 that the order direct the person not to drive and to surrender his license, and the further directive that a copy of the order be mailed to the defendant if it appears he was not present, bespeak a requirement that the person receive actual notice of having been declared an habitual offender and directed not to drive before he can be convicted and imprisoned for driving after having been declared an habitual offender.

Id. at 471, 424 S.E.2d at 720. See also Rose v. Commonwealth, 37 Va. App. 728, 733, 561 S.E.2d 46, 49 (2002), rev'd, 265 Va. 439, 578 S.E.2d 759 (2003). Reed remains good law. See, e.g., Saunders v. Commonwealth, 48 Va. App. 196, 206, 629 S.E.2d 701, 705-06 (2006).

- 10 -

The notice requirement prescribed by Reed in the context of an *inter partes* judicial proceeding applies with at least equal force in the context of an *ex parte* administrative proceeding, the case here.

The entry on the DMV transcript notes "REVOCATION" issued "1997/04/28 EFFECTIVE: 1997/05/28 FOR H.O. DETERMINATION PROCESS." Although the wording is confusing, under the law at the time, any such revocation would have been pursuant to an *ex parte* administrative revocation of Bishop's license by the Commissioner of DMV. The next two entries are:

> NOTIFIED: 2001/03/10 BY LAW ENFORCEMENT
> ORDER DELIVERY DATE:   ORDER MAILED

The first entry does not state the means or substance of notification or identify the person, agency or process termed "Law Enforcement." The next line provides no proof of notice. Therefore, the DMV transcript falls short of proving the notice required by Reed.

The majority recites that Bishop "concedes he received the notice from 'law enforcement' in 2001." It bases its finding of this concession on defense counsel's argument at the conclusion of the evidence.

At trial, appellant's attorney attempted to interpret the notations on the DMV transcript and stated:

> [The DMV transcript] will tell you that the revocation which occurred April 28, 1997, I'm sorry, April 28, 1997, that he was notified for the H.O. determination, that is the habitual offender determination by law enforcement. It doesn't actually say he was notified after he was declared habitual offender. I think that is an important distinction.
>
> He was notified of the process whereby he was going to be waived or where he was going to be adjudicated habitual offender so that he would know that it was going to occur, but it doesn't actually say he was notified having been adjudicated an habitual offender.

- 11 -

And I would suggest to the Court that under the <u>Reed</u> case, and I have copies right here. First of all, actual notice is required and I would suggest to the Court we don't even see constructive notice on this record. We know he was notified that there was going to be a termination, but we don't see in the record that he was going to be notified that he was determined habitual offender. But I would suggest without notice we cannot sustain a conviction

In his petition, appellant's attorney wrote:

The DMV record in this case has two notations, the interpretation of which is the critical issue here. First, the record indicates that on April 23, 1997, Appellant was "DETERMINED" to be an habitual offender by DMV. The record does not show whether or not Appellant was ever notified of this determination. Immediately below this notation is an indication that there existed a "REVOCATION" issued on April 28, 1997 and effective on May 28, 1997. The notation then reads: "FOR HO DETERMINATION PROCESS." *That same entry reflects that an order was mailed and that Appellant received notification from law enforcement on March 10, 2001.*

The DMV record is ambiguous on its face, however, a point which Appellant's trial counsel noted. It indicates that Appellant was notified of something by law enforcement, but not as to what that something was. The most clear reading of the DMV record, and the only one supported by the plain language, is that Appellant was notified of the "HO DETERMINATION PROCESS," not that he was notified that he was or had been declared an habitual.

(Emphasis added.)

Appellant's attorney's representations were not evidence. They were not a stipulation of evidence intended to limit the scope of required proof. They were argument as to what, if anything, could be concluded from the evidence. This argument must be considered *in toto*. Bishop cannot be charged with what his counsel didn't say.

Moreover, in recognizing that appellant received some notice on March 10, 2001, appellant's attorney did not concede the contents of that notice. Instead, he argued that the record was unclear as to what notification appellant received from the unidentified "law enforcement." To comply with <u>Reed</u>, the Commonwealth had the burden of proving through

testimony or documents from "law enforcement" the details and circumstances of notification. This the Commonwealth failed to do.

The majority notes that the statutorily prescribed "process" is a review procedure post-determination. It holds that defense counsel should have known this and that his concession of notice of the process must acknowledge notice of the underlying habitual offender determination. In my view, this approach transgresses the appropriate standard of review. Knowledge of law is one thing. Proof of fact is another. We cannot substitute our knowledge of the statutory scheme, or our hopeful attribution of such knowledge to counsel, for proof that Bishop was in fact given the notice required by Reed.

I would reverse Bishop's habitual offender conviction and order that charge dismissed.